## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARIELA VALDERRAMA**, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: RWT 09cv2114 |
| | * | |
| **HONEYWELL TSI AEROSPACE** | * | |
| **SERVICES, *et al.*,** | * | |
| | * | |
| Defendants. | * | |
| | *** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Mariela Valderrama, pro <u>se</u>, has brought this action under the Maryland Wage Payment and Collection Law, Md. Code. Ann., Lab. & Empl. §§ 3-501–3-509, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (2006) ("ERISA"), seeking early retirement benefits from Defendants Honeywell Technology Solutions Inc. ("HTSI"),[1] Honeywell International Inc. ("Honeywell"), Victor Miller, and Katherine L. Adams. This case presents the question of whether an erroneous benefits estimate, upon which a former employee did not rely, can be the basis for a claim of benefits under a plan governed by ERISA. The Court concludes that it cannot.

For the reasons discussed below, Defendants are entitled to summary judgment as to the ERISA claim and Plaintiff's state law claim must be dismissed because it is preempted by federal law.

---

[1] The Complaint incorrectly names "Honeywell TSI Aersopace Services" as a Defendant. Defs.' Mot. for Summ. J. 1 (Paper No. 22). The correct entity is Honeywell Technology Solutions Inc. <u>Id.</u>

**BACKGROUND**

On May 5, 1980, Valderrama began working for Defendants[2] as a Software Engineer providing services for a contract at NASA's Goddard Space Flight Center. Compl. ¶ 3; Pl.'s Mot. for Summ. J. 1 (Paper No. 30). After 22 years of work, on April 29, 2002, Valderrama's employment was terminated in connection with a reduction in force. Compl. ¶ 3; Defs.' Mot. for Summ. J. 6. Defendants paid, as Valderrama concedes, "normal severance" including vacation pay and separation severance payments.[3] See Pl.'s Mot. for Summ. J. 2; Pl.'s Mot. to Strike, Ex. A VAL#024 (Paper No. 29). Valderrama seeks payment of "80-Point Early Retirement" benefits under the Honeywell International pension benefit plan (the "Plan"), which would enable her to receive early retirement benefits. Defs.' Mot. for Summ. J. 12; see Pl.'s Mot. for Summ. J. 2.

**I. THE PLAN**

**A. Administrative Structure**

The Plan[4] is an employee pension benefit plan as defined under ERISA § 3(2), 29 U.S.C. §1002(2). Defs.' Mot. for Summ. J. 2; Compl. ¶ 1. The Plan Sponsor is Honeywell. Defs.' Mot. for Summ. J., Ex. 1B HON-VAL 000083, 000087. The Plan designates the Plan Administrator as the Honeywell "Vice President, Human Resources, Compensation and Benefits or an Employee with a successor title." Id. at 000089, 0000381, 0000384. The Plan grants discretionary authority to the Plan Administrator to make all determinations regarding eligibility

---

[2] Initially, Plaintiff started work with Bendix Field Engineering Corp. ("Bendix"). Pl.'s Mot. for Summ. J. 1. Bendix became Allied Signal and later HTSI. Id.

[3] Additionally, according to Defendants, Valderrama's normal retirement benefits are unaffected by her termination. Defs.' Opp'n (Paper No. 35) at 6, n. 7. If Valderrama chooses to begin receiving pension benefits on her normal retirement date of February 1, 2018, the current estimate of what her monthly benefit will be is $855. Id.

[4] The Plan is attached to Defs.' Mot. for Summ. J. (Paper No. 22) as Exhibit 1B to the Declaration of Lisa M. Dooley, Bates-stamped HON-VAL 000076 through 000574. The administrative record of Plaintiff's claim for benefits is attached as Exhibit 1A, Bates-stamped HON-VAL 000001 to 000075.

for benefits and to interpret Plan terms.  Id. at 000384–000385.  The "Pension and Savings Plan Appeals Committee" (the "Committee") is appointed from time to time by the Plan Administrator to assist in the administration of the Plan.  Id. at 0000381.

When an employee wishes to initiate a claims procedure under the Plan, the claim for benefits must be submitted to the Plan Administrator.  Id. at 0000388–0000391.  The Committee will review the Plan Administrator's initial claims decision in the event a claimant appeals a denial of benefits.  Id.

## B.     Bridge Leave

Bridge leave is a mechanism for employees who do not immediately qualify for early retirement to be "bridged" a period of unpaid leave so as to qualify them for early retirement. See Defs.' Mot. for Summ. J. 4–5.  Under the Plan, a participant becomes eligible for normal retirement benefits when he or she attains normal retirement age.  Id., Ex. 1B 000166. Subsidized early retirement benefits are available to participants who attain age fifty-five and have completed at least five years of service ("Regular Early Retirement Age"), or whose sum of age and years of vesting service equal eighty ("80-Point Early Retirement Age").  Id. at 000158– 000159; see also id. at 000169–000171.  The Plan's "bridge leave of absence" provisions allow participants who receive periodic severance benefits in connection with a reduction in force, and who satisfy certain conditions, to qualify for early retirement benefits.  Defs.' Mot. for Summ. J. 4. The Plan provides in relevant part with respect to bridge leave:

> 2.03     SPECIAL PROVISIONS FOR A BRIDGE LEAVE TO QUALIFY FOR RETIREMENT.  Severance is provided at the end of notice and vacation and only for those Employees subject to a reduction in force.  If a Participant receives periodic severance payments from the Employer and if, on the expiration of such severance, the Participant–
>
>> (a)     has not attained Early Retirement Age or is not eligible for 80-Point Early Retirement under Section 4.02(b) . . . , and

(b)   is

(i) within 24 months of attaining his Regular Early Retirement Age; or

(ii) *within 36 months of attaining his 80-Point Early Retirement Age*; or

(iii) within 36 months of his Normal Retirement Age (if no other eligibility can be met),

then such Employee shall be entitled to an additional unpaid Bridge Leave to qualify for retirement.

Defs.' Mot. for Summ. J., Ex. 1B 000164–000165 (emphasis added).

At the time Valderrama's severance payments ended, she was more than fifty months away from her 80-Point Early Retirement date. Defs.' Mot. for Summ. J., Ex. 1A 000061. In July 2002, Valderrama was 49.4630 years old, with 22.1781 years of service under the Plan, giving her 71.6411 points. Id. To qualify for 80-Point Early Retirement, Valderrama needed an additional 8.3589 points, which she could obtain only if she continued working until September 12, 2006. Id.

## II.   VALDERRAMA'S CLAIM FOR ERISA BENEFITS

Upon termination, Valderrama was presented with an "Employment Separation Agreement and Release" ("Separation Agreement"). Defs.' Mot. for Summ. J., Ex. 1A 000030–000037. Additionally, at Valderrama's request, Honeywell provided a "Benefits Estimate" explaining her possible retirement benefits. See id. at 000004–000005. Valderrama argues that she is entitled to early retirement benefits because statements in the Separation Agreement and the Benefits Estimate promised her five months of bridge leave, thereby qualifying her for the 80-Point Early Retirement age. Compl. ¶ 5.

## A.    The Separation Agreement

The Separation Agreement provided that Valderrama's last day of work would be April 29, 2002, and her employment would terminate effective June 10, 2002.  Defs.' Mot. for Summ. J., Ex. 1A 000030–000037.   Her salary at termination, health insurance, savings plan, and pension plan participation (severance payments) would continue through July 8, 2002.  Id.

The Separation Agreement contains an apparent error stating that Valderrama will receive five months of unpaid leave to bridge her to the 80-Point Early Retirement.   The statement reads:

> At the end of your salary continuation period, you will be will be [sic] within 5 months of qualifying for an "80 point" retirement (Age + Service = 80 or more).  Therefore, according to Company policy, you will be granted an unpaid leave of absence of up to 5 months in order to receive an 80-point retirement.  This bridge leave will allow you to meet plan requirements for the Rule of 80 Retirement.

Id. at 000033.  The statement conflicts with the Plan terms because under the Plan, Valderrama would be eligible for bridge leave only if, at the time severance payments ceased on July 8, 2002, she was within thirty-six months of being eligible for 80-Point Early Retirement.  Defs.' Mot. for Summ. J., Ex. 1B 000164–000165.  At the time her severance payments ceased, Valderrama was over fifty months from early retirement.[5]  Defs.' Mot. for Summ. J., Ex. 1A 000061.

The Separation Agreement was never signed by Valderrama, Compl. ¶ 8, and contains a clause stating that:

> Nothing in this Agreement and Release is intended to create or enlarge your rights to benefits under any Honeywell International, AlliedSignal or any other pension benefit plan.

---

[5] If Valderrama had remained employed, she would have reached her 80-point early retirement date on September 12, 2006. Defs.' Mot. for Summ. J., Ex. A at 000061–62.  To be eligible for a bridge leave to that date, she would have been required to be receiving severance benefits until September 12, 2003, which is thirty-six months before September 12, 2006.  Id.

Id. at 000030.

**B.    The Benefits Estimate**

On April 29, 2002, the same day she was terminated, Valderrama telephoned the pension service center and requested information about her retirement benefits. Defs.' Mot. for Summ. J., Ex. 1A 000001, 000019. In response, Honeywell provided a Benefits Estimate explaining the pension benefits to which Plaintiff would be entitled if she continued to work until January 20, 2008, based on credited service beginning on May 5, 1980. Id. at 000004–000005. The Benefits Estimate said that Valderrama's "Type of Retirement" was "Early 80pt." Id. at 000004.

The Benefits Estimate was marked "ESTIMATE ONLY" on each page, and stated, "All calculations are estimates, subject to audit and adjustment." Id. (emphasis in original).

**C.    The Denial of Valderrama's Benefits Claim**

In December 2007, January 2008, and February 2008, Valderrama sent inquiries to Defendants  regarding her retirement benefits. Defs.' Mot. for Summ. J., Ex. A at 00064, 000070, 000071, 000073. In a letter dated March 27, 2008, Carolyn Larsen, a Honeywell employee who worked with the Honeywell Retirement Service Center to respond to inquiries from participants, explained to Valderrama that she did not qualify for 80-Point Early Retirement. Defs.' Mot. for Summ. J. 8. Defendants then notified Valderrama in a letter dated September 3, 2008 that the Plan Administrator denied Valderrama's request for bridge leave. Id. at 000026–000028.

Valderrama submitted an appeal in a letter dated September 30, 2008. Id. at 000013–00025. On January 19, 2009, Brian J. Marcotte, on behalf of the Committee, notified Plaintiff that her appeal had been denied. Id. at 000008–000012.

## PROCEDURAL HISTORY

On or around July 15, 2009, Valderrama filed a complaint against Defendants in the Circuit Court for Prince George's County.[6] Approximately four weeks later, Defendants removed the case to this Court. Defs.' Notice of Removal (Paper No. 1).

On October 1, 2009, Defendants filed a Motion to Dismiss and Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), and 56. See Paper No. 22. On October 21, 2009, Valderrama filed a "Motion to Strike Declaration's Exhibit 1A" pursuant to Federal Rules of Civil Procedure 12(f), see Paper No. 29, and a Cross-Motion for Summary Judgment, see Paper No. 30. On November 25, 2009, Defendants filed a Motion for Permission to File Surreply Memorandum, see Paper No. 40, which Valderrama opposed in a Motion to Strike Defendant's Proposed Surreply, see Paper No. 42.

## STANDARD OF REVIEW

### I. MOTION TO DISMISS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[6] Although the complaint does not contain separate counts, Valderrama appears to assert two claims: (1) a state law violation of the Maryland Wage Payment and Collection Law § 3-501 (2010) (amended April 13, 2010), and (2) a federal claim under ERISA.

## II. SUMMARY JUDGMENT

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. Anderson, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." Felty v. Grave-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (emphasis added).

## ANALYSIS

## I.     VALDERRAMA'S MOTION TO STRIKE DEFENDANTS' EXHIBIT 1A

Valderrama moves this Court, pursuant to Federal Rules of Civil Procedure 12(f), to strike Defendants' Exhibit 1A attached to Defendants' Motion for Summary Judgment on the grounds that the exhibit is irrelevant, incomplete, contains "legal conclusion analysis [sic]," was submitted in bad faith, and the declaration to which the exhibit was attached fails to satisfy the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  See Pl.'s Mot. to Strike 1 (Paper No. 29); Pl.'s Reply in Supp. of Pl.'s Mot. to Strike 2–3 (Paper No. 36).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'"  Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed.1990)).

In the instant case, Valderrama's Rule 12(f) Motion to Strike is inappropriate because Valderrama seeks to strike an exhibit and a declaration and not a pleading or a portion of a pleading.  Exhibits and declarations are not "pleadings" and are not subject to Rule 12(f) motions to strike.  Thomas v. BET Sound-Stage Restaurant/BrettCo, Inc., 61 F. Supp. 2d 448, 458 (D. Md. 1999) (denying motion to strike exhibits attached to defendants' motions to dismiss).[7] Moreover, the subject matter of Exhibit 1A, the administrative record generated with respect to

---

[7] Accord Karagiannopoulos v. City of Lowell, No. 3:05-CV-00401-FDW, 2007 WL 4180616, at *1 (W.D.N.C. Nov. 20, 2007) (denying pro se plaintiff's motion to strike exhibit because Rule 12(f) applies only to pleadings).

Valderrama's claim for retirement benefits, is directly relevant to evaluating the Plan

Administrator's decision to deny Valderrama early retirement benefits.[8]

Valderrama next argues that the declaration to which Exhibit 1A is attached should also

be stricken because of a failure to satisfy Rule 56(e) of the Federal Rules of Civil Procedure and

Rule 702 of the Federal Rules of Evidence.  See Pl.'s Reply in Supp. of Pl.'s Mot. to Strike 2–4.

Valderrama's arguments are meritless.  The sole purpose of Lisa Dooley's Declaration is to

authenticate the documents attached thereto.[9]  Dooley is not being offered as an expert and the

Declaration is not being offered as expert testimony.  Finally, Dooley's Declaration satisfies the

requirements of 28 U.S.C. § 1746.  There is nothing before the Court to indicate that the

Declaration or Exhibit 1A was submitted in bad faith.[10]  For these reasons, Valderrama's Motion

to Strike Exhibit 1A will be denied.

## II.     DEFENDANTS' MOTION TO FILE A SURREPLY

Pursuant to Local Rule 105(2)(b), Defendants seek leave to file a surreply in response to

Valderrama's Reply briefs:  "Reply Memorandum In Support To Plaintiff's Motion to Strike"

(Paper No. 36) and "Plaintiff's Reply Memorandum in Support To Plaintiff's Motion for

---

[8] Valderrama argues that Exhibit 1A is an incomplete administrative record and that the Plan Administrator's denial of her claim is flawed because of reliance on an incomplete record.  See Pl.'s Reply in Supp. of Mot. to Strike 10. This argument fails for two reasons.  First, the Plan Administrator advised Valderrama of her right and duty to submit evidence in support of her benefits claim.  Defs.' Mot. for Summ. J., Ex. 1A 000029.  The documents Valderrama now identifies as absent from the administrative record were never submitted to the Plan Administrator and thus could not be considered as part of Valderrama's claim.  Second, even if the documents had been submitted, they are irrelevant to her claim for benefits.  See Defs.' Opp'n to Mot. to Strike 8-10.

[9] Cf. Spence v. NCI Info. Sys., Inc., No. L-05-3127, 2009 WL 524739, at *4 (D. Md. Feb. 27, 2009) (holding that declaration submitted pursuant to 28 U.S.C. § 1746 is properly submitted in support of motion for summary judgment); Owens-Corning Fiberglas Corp. v. U.S. Air, 853 F. Supp. 656, 663 (E.D.N.Y. 1994) (deciding that an affidavit should not be stricken when its function was to identify and introduce into evidence the exhibits annexed thereto).

[10] Valderrama appears to argue that she had a contract with Defendants for bridge leave and that Dooley's explanation of Defendants' refusal to pay constitutes bad faith because Dooley and Defendants should have honored the contract.   See Pl.'s Reply in Supp. of Mot. to Strike 5-7.  First, the document to which Valderrama seems to refer is not a binding contract but rather an *unsigned* Separation Agreement.  Second, Defendants' decision to deny her claim was not in bad faith when Defendants had ample evidence that she was far outside the required time frame to qualify for 80-Point Early Retirement. See infra Part IV.

Summary Judgment" (Paper No. 37). Defs' Mot. to File Surreply (Paper No. 40). In response, Valderrama moves to strike the proposed surreply. Pl.'s Mot. to Strike (Paper No. 42).

Courts have discretion to allow surreplies when a party raises new arguments in a reply brief. See Sampson v. City of Cambridge, 251 F.R.D. 172, 175 n.3 (D. Md. 2008); Openshaw v. Cohen, Klingenstein & Marks, Inc. 320 F. Supp. 2d 357, 360 n.2 (D. Md. 2004).[11] Here, the Court finds that because Valderrama raises new arguments[12] in both of her Reply briefs, the Defendants are justified in filing a surreply, and their motion will be granted.

## III.    DEFENDANTS' MOTION TO DISMISS

Defendants argue that Valderrama's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because (A) the named defendants are not proper party defendants to an ERISA claim[13] and (B) all state law claims are preempted by ERISA.

### A.    Improper Defendants

Valderrama's claim for retirement benefits arises under 29 U.S.C. § 1132(a)(1)(B). Valderrama sued her former employer (HTSI), the Plan sponsor (Honeywell), and two individuals: Victor Miller, Honeywell Vice President, and Katherine L. Adams, Honeywell Senior Vice President and General Counsel.

A suit to recover ERISA benefits may be brought only against the plan, the plan administrator, or a plan fiduciary. Gluth v. Wal-Mart Stores, Inc., No. 96-1307, 1997 WL

---

[11] See also United States ex rel. Carter v. Halliburton Co., No. 1:08cv1162 (JCC), 2009 WL 2240331, at *16 (E.D. Va. July 23, 2009).

[12] For example, in her Reply Memorandum in Support of Plaintiff's Motion to Strike, Valderrama asserts for the first time that Lisa Dooley's Declaration was submitted in bad faith in violation of Rule 56(g) of the Federal Rules of Civil Procedure. Pl.'s Reply in Supp. of Mot. to Strike 6. Also, in her Reply Memorandum in Support To Plaintiff's Motion for Summary Judgment, Valderrama asserts for the first time that ERISA does not preempt her state law claims because ERISA does not preempt criminal laws. Pl.'s Reply in Supp. of Mot. for Summ. J. 3.

[13] Defendants further move to dismiss pursuant to Rule 12(b)(7) because Valderrama failed to join necessary parties under Rule 19. The Court need not reach this argument because the Complaint will be dismissed on other grounds.

368625, at *6 (4th Cir. June 3, 1997); <u>Ankney v. Metro. Life Ins. Co.</u>, 438 F. Supp. 2d 566, 574 (D. Md. 2006) (ruling that proper defendant in action to recover ERISA benefits is entity with discretionary decision-making authority); <u>see also</u> <u>Howell v. Truck Drivers & Helpers Local Union No. 355</u>, No. WDQ-07-0989, 2008 WL 6742575, at *3 (D. Md. April 19, 2008) (holding that proper defendants in benefits action are the plan and the fiduciaries who control plan administration).

Here, the Plan Administrator is the "Vice President, Human Resources, Compensation and Benefits or an Employee with a successor title," Defs.' Mot. for Summ. J., Ex. 1B 000089, 0000381, 0000384, and the fiduciary with decision making authority is the Committee. <u>Id.</u> 0000381. None of the named Defendants is or is alleged to be the Plan, a fiduciary of the Plan, or an entity that controls the administration of the Plan. Valderrama's Complaint is therefore subject to dismissal under Rule 12(b)(6) because it names improper parties. However, even if Valderrama had named the proper defendants, her claims would still fail because, as explained in Part III.B, <u>infra</u>, her state law claims are preempted by federal law, and, as explained in Part IV, <u>infra</u>, Defendants are entitled to Summary Judgment in their favor as to her claims arising under ERISA.

### B.    ERISA Preempts Valderrama's State Law Claims

Valderrama alleges that the failure to pay retirement benefits violates the Maryland Wage Payment and Collection Law Section 3-501. Compl. ¶¶ 6–9, 12.[14] Valderrama argues that the statement in the unexecuted Separation Agreement promising her five months of unpaid bridge leave constitutes a "bonus" or "wages" under Maryland state law. <u>See</u> Pl.'s Mot. for Summ. J. 2,

---

[14] Valderrama also alleges a state law claim of "[v]iolation of duty of good faith and fair dealings." Compl. ¶ 12. However, as explained in Part I, <u>supra</u>, there is no evidence that Defendants denial of Valderrama's claim was conducted in bad faith. Rather, Defendants denied Valderrama's claim because she simply did not qualify for 80-Point Early Retirement. <u>See</u> Part IV, <u>infra</u>.

7–8 (Paper No. 30).  Defendants contend that all of Valderrama's state law claims are preempted

by ERISA because Valderrama is suing under a Plan governed by ERISA,[15] and Valderrama is

seeking ERISA *benefits* not a "bonus" or "wages."  See Defs.' Mot. for Summ. J. 15; Defs.'

Opp'n and Reply 11.

ERISA preempts "any and all state laws insofar as they now or hereafter *relate to* any

employee benefit plan . . . ." 29 U.S.C. § 1144(a) (2006) (emphasis added); Shaw v. Delta Air

Lines, Inc., 463 U.S. 85, 96–97 (1983).  A state law claim "relates to" and is preempted by

ERISA when the state law has a "connection with or reference to" an employee benefit plan,

Shaw, 463 U.S. at 96–97, or the state law claims "rest on the very same allegations that support

[plaintiff's] ERISA claim."  Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d

326, 343 (4th Cir. 2007).  State law claims that arise out of the same factual circumstances as the

ERISA claim and are pled as an alternative are preempted by ERISA.  Id.; see also Miller v. U.S.

Foodservice, Inc., 323 F. Supp. 2d 665, 668 (D. Md. 2004) (state law claims based on promises

regarding ERISA plan benefits are preempted, even if the basis for the claims is a promise that

also affected plaintiff's expected term of employment).

Courts in the Fourth Circuit have specifically held that claims for benefits alleged to be

owed under a severance plan and brought under state wage payment acts are preempted by

ERISA.  Holland v. Burlington Indus., 772 F.2d 1140, 1147 (4th Cir. 1985).

> Given the unparalleled breadth of ERISA's preemption provision, we have no trouble
> concluding that the state actions at issue are preempted. The state law here [the North
> Carolina Wage Payment Act] essentially requires employers to pay wages due upon
> termination of employment.  Insofar as this statute is invoked in pursuit of benefits
> allegedly due under Burlington's severance pay plan, it 'relates to' an employee benefit
> plan covered by ERISA.

---

[15] The Plan is a pension benefit plan providing employees with retirement benefits.  See 29 U.S.C. §§ 1002(2),
1002(5), and 1003(a).

Id.; Scott v. Am. Nat'l Red Cross, No. AMD 05-1284, 2005 WL 2510456, at *4 (D. Md. Oct. 11, 2005) (holding that to the extent a plaintiff's state law claim under the Maryland Wage Payment and Collection Law is invoked in pursuit of benefits due under an ERISA plan, it relates to an ERISA plan and is preempted).

In the instant case, Valderrama's state law claims under the Maryland Wage Payment and Collection Law are preempted because they relate to ERISA. Scott, 2005 WL 2510456, at *4 (citing Holland, 772 F.2d at 1147). Additionally, Valderrama's claim is undoubtedly one for retirement benefits and not for "wages" or a "bonus." Valderrama alleges that Defendants failed to pay promised retirement benefits. The remedy Valderrama seeks is bridge leave entitling her to early retirement benefits. The bridge leave and the retirement benefits are available because of the Plan's existence and are available only under the Plan. Cf. Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001) ("When a cause of action under state law is 'premised on' the existence of an employee benefit plan so that 'in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists,' ERISA preemption will apply"). Therefore, Defendants' Motion to Dismiss Valderrama's state law claims will be granted.[16]

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that summary judgment should be granted in their favor on Valderrama's claim for benefits under ERISA because the Plan delegates authority to determine claims to the Plan Administrator, the Plan Administrator denied Valderrama's claim, and that decision was not an abuse of discretion. See Defs.' Mot. for Summ. J. 21. Valderrama argues that the Plan Administrator's decision was wrong and that she is entitled to early retirement

---

[16] In her Cross-Motion for Summary Judgment, Paper No. 30, Valderrama asserts that Summary Judgment should be granted in her favor on her state law claim under the Maryland Wage Payment and Collection Law § 3-501. However, for the reasons stated in part III.B, supra, ERISA preempts Valderrama's state law claims. Accordingly, Valderrama's Cross-Motion for Summary Judgment will be denied.

benefits because of statements Honeywell made in the Benefits Estimate and the Separation

Agreement.  See Pl.'s Opp'n 20.

**A.    Whether the Plan Administrator's Denial of Valderrama's Claim for Benefits Was an Abuse of Discretion.**

When an ERISA plan grants an administrator discretionary authority to decide claims, the

administrator's decision must be reviewed under an abuse of discretion standard of review.[17]

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Ellis v. Metro. Life Ins. Co.,

126 F.3d 228, 232 (4th Cir. 1997).  "Under this deferential standard, the administrator or

fiduciary's decision will not be disturbed if it is reasonable."  Ellis, 126 F.3d at 232.  "Such a

decision is reasonable if it is 'the result of a deliberate, principled reasoning process and if it is

supported by substantial evidence.'"  Id. (quoting Brogan v. Holland, 105 F.3d 158, 161 (4th Cir.

1997)).[18]  In assessing the reasonableness of an administrator's decision, courts consider only the

evidence that was before the administrator at the time the administrator determined the claim.

Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994).

In the instant case, the Plan Administrator's decision to deny Valderrama's claim was

reasonable, based on sufficient evidence, and was not an abuse of discretion.  The Plan

Administrator denied Valderrama's claim for retirement benefits because of two reasons.  She

did not have sufficient points to qualify for 80-Point Early Retirement.  Defs.' Mot. for Summ. J.

23–24.  Moreover, she did not qualify for bridge leave because she was more than thirty-six

---

[17] In this case, the Plan grants discretionary authority to the Plan Administrator to make all determinations regarding eligibility for benefits and to interpret Plan terms.  Defs.' Mot. for Summ. J., Ex. 1B 000384–000385.  The Committee reviews appeals from a Plan Administrator's denial of benefits.  Id. at 000381.

[18] Accord Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322–323 (4th Cir. 2008); Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 344 (4th Cir. 2000).

months from attaining the 80-Point Early Retirement age. Id. This decision was supported by substantial evidence.

First, Valderrama was well short of qualifying outright for 80-Point Early Retirement. Upon termination, Valderrama was 49.463 years old, with 22.1781 years of service under the Plan, giving her 71.6411 points. Defs.' Mot. for Summ. J., Ex. 1A 000009, 000061. Second, Valderrama was also short of qualifying for the bridge leave period to bridge her to early retirement. Under the Plan, Valderrama would be eligible for bridge leave only if, at the time severance payments ceased on July 8, 2002, she was within thirty-six months of qualifying for 80-Point Early Retirement. Defs.' Mot. for Summ. J., Ex. 1B 000164–000165. However, at the time severance payments ceased, Valderrama was fifty months from qualifying. Defs.' Mot. for Summ. J., Ex. 1A 000009, 000061.

Under the terms of the Plan, Valderrama did not qualify either for early retirement or bridge leave. Therefore, the Plan Administrator's decision to deny her claim for benefits was reasonable, based on sufficient evidence, and was not an abuse of discretion.

**B.      Whether Statements Inconsistent With the Plan Vary the Plan's Terms or Grant Valderrama Bridge Leave.**

An ERISA plan fiduciary has a duty to administer the plan in conformity with the plan documents and in accordance with the instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D); Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 129 S.Ct. 865, 875 (2009). Accordingly, ERISA "places great emphasis upon adherence to the written provisions in an employee benefit plan." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 56 (4th Cir. 1992). The terms of an ERISA plan cannot be varied by oral or written representations. See HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross, 101 F.3d 1005, 1010 (4th Cir. 1996); Band v. Paul Revere Life Ins. Co., 14 F. App'x 210, 213 (4th Cir. 2001) (rejecting an

employee's attempt to obtain benefits based on erroneous information that conflicted with ERISA plan terms).  Finally, "[i]t is well settled in this Circuit that principles of waiver and estoppel cannot be used to modify the express terms of an ERISA plan."  Band, 14 F. App'x at 213; Graham v. Pactiv Corp. Benefits Committee, 301 F. Supp. 2d 483, 493 (E.D. Va. 2004).

Here, because the express terms of the Plan do not grant her bridge leave or retirement benefits, Valderrama relies on two documents that allegedly promised or represented to her that she qualified for 80-Point Early Retirement.  However, neither of these documents is availing.

The first document, the Separation Agreement, was never signed by Valderrama.  Compl. ¶ 8; Defs.' Mot. for Summ. J., Ex. 1A 000030–000037.  Therefore, even if statements in the Separation Agreement could be interpreted to grant Valderrama five months of bridge leave, the Separation Agreement is not contractually binding.  Additionally, the Separation Agreement clearly stated that "[n]othing in this Agreement and Release is intended to create or enlarge your rights . . . . " Id. at 000030.  The statement that Valderrama was "within 5 months" of qualifying for early retirement conflicted with the clear terms of the Plan, and when a written representation conflicts with the terms of the Plan, the Plan controls. HealthSouth, 101 F.3d at 1010; Band, 14 F. App'x at 213; Graham, 301 F. Supp. 2d at 493.  Finally, even if Valderrama were given the five months of unpaid leave mentioned in the Separation Agreement, she would still not qualify for bridge leave because she was more than thirty-six months from her 80-Point Early Retirement date.[19] Defs.' Mot. for Summ. J., Ex. 1A 000009–000010.

This case is similar to Band v. Paul Revere Life Ins. Co., 14 F. App'x 210, 213 (4th Cir. 2001).  In Band, the employer recorded an incorrect birth date on the employee's insurance

---

[19] Valderrama's thirty-six month benchmark falls on  September 12, 2003.  Defs.' Mot. for Summ. J., Ex. A at 000061–62.  The statement in the Separation Agreement allegedly promising Valderrama five months of unpaid leave was made on July 8, 2002.  Id. at 000030–000037.  Granting Valderrama five months of unpaid leave would only bring her to December 8, 2002, which is still shy of the thirty-six month benchmark (September 12, 2003).

application.  As a result of the mistake, the employee qualified for and was given 48 months of disability coverage.  After learning of the mistake, the employer reduced the coverage by six months to the correct level pursuant to the plan terms.  The Band Court ruled that the employer was correct to reduce the employee's coverage despite the initial miscalculation because principles of waiver and estoppel were inapplicable and ERISA plan terms controlled.  Similarly, the mistaken statement in the Separation Agreement in this case conflicted with the clear terms of the Plan.  Valderrama was not "within 5 months" of 80-Point Early Retirement as stated in the Separation Agreement.  Defs.' Mot. for Summ. J., Ex. 1A 000033.  Rather, Valderrama was fifty months from qualifying.  Id. at 000061.

Valderrama also argues that the second document, the Benefits Estimate, granted her five years of credited service thus granting her enough points to qualify for 80-Point Early Retirement.  See Pl.'s Opp'n (Paper No. 32) 20–21; id., Valderrama Aff. ¶ 9.  However, the Benefits Estimate was clearly marked "ESTIMATE ONLY" on every page.  Defs.' Mot. for Summ. J., Ex. 1A at 000003–000006.  It was therefore advisory only and did not serve to grant Valderrama five years of credited service.  Additionally, the Benefits Estimate erroneously granted her five years of credited service because it incorrectly assumed that she would continue working until January 20, 2008.  Pl.'s Mot. to Strike, Ex. A VAL#026.  The Benefits Estimate failed to account for her termination on April 29, 2002.  See id.

Moreover, even if Defendants' mistakes could be considered, Valderrama did not detrimentally rely on the Separation Agreement or the Benefits Estimate.  To the extent Valderrama seeks equitable estoppel, her argument is unpersuasive because both documents were issued after her termination, and she did not retire expecting certain benefits.  See Graham, 301 F.Supp. 2d at 493 (denying an employee's claim, under an equitable estoppel theory, for a

higher pension benefit amount based on erroneous estimates because the written terms of the plan controlled). Therefore, the mistaken statements in the Separation Agreement and the Benefits Estimate do not vary the terms of the plan and do not grant Valderrama bridge leave.

## CONCLUSION

A fiduciary of a benefits plan governed by ERISA has a duty to protect plan assets and ensure that they are devoted only to what is authorized under the plan. See, e.g., Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985); LaRue v. DeWolff, Boberg & Assocs., Inc., 458 F.3d 359, 362 (4th Cir. 2006). It is unfortunate that Honeywell provided Valderrama an inaccurate benefits forecast, but this error, absent a binding contract or detrimental reliance, cannot convert an illegitimate claim into a legitimate one.

For the foregoing reasons, the Court will, by separate Order, grant Defendants' Motion to Dismiss and for Summary Judgment (Paper No. 22), deny Valderrama's Motion to Strike Exhibit 1A (Paper No. 29), deny Valderrama's Cross-Motion for Summary Judgment (Paper No. 30), grant Defendants' Motion to File Surreply (Paper No. 40), and deny Valderrama's Motion to Strike Defendant's Proposed Surreply (Paper No. 42).


July 13, 2010                                              /s/
Date                                          Roger W. Titus
                                              United States District Judge